UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALLISON LENDING LLC,

              Plaintiff,

-against-

CROTON DEVELOPMENT LLC and VASEL BALBONA,

              Defendants.

**ORDER**

24-CV-07956 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

      Allison Lending LLC ("Plaintiff") initiated this action on October 18, 2024, seeking to foreclose on a mortgage executed by Defendant Croton Development LLC and guaranteed by Defendant Vasel Balbona (together, "Defendants"). (Doc. 1). On November 25, 2024, Plaintiff and Defendants entered into a forbearance agreement. (Doc. 19-5, Ex. 1, "Forbearance Agreement"). The Forbearance Agreement, by its terms, "constitute[d] [] part of the Loan Documents." (*Id.* § 10). Defendants "agreed and acknowledged that any default in the performance or observance of any term, covenant or agreement to be performed" under the Forbearance Agreement "shall be deemed to be an immediate Event of Default under the Loan Documents." (*Id.* § 1(l)). Defendants also consented to Plaintiff "immediately fil[ing] a judgment against" them in the event of default and agreed to "waive[] any and all defenses, rights of appeal, or objections to the entry of such judgment and agrees not to contest the [Plaintiff's] right to obtain and enforce the judgment in any court of competent jurisdiction." (*Id.* § 4).

      Defendants defaulted on their payments on January 1, 2025. (Doc. 19-5 ¶¶ 7, 9). Thereafter, on January 8, 2025, Clerk's Certificates of Default were entered as to Defendants. (Doc. 15; Doc. 16). The Court, on motion by Plaintiff, entered an order to show cause on March 21, 2025, as to why entry of default judgment should not be entered against Defendants. (Doc. 21). On April 28,

1

2025, Defendants filed a "response to the order to show cause." (Doc. 26). Defendants' response included: a declaration by Balbona (Doc. 26-1, "Balbona Decl."); a copy of a bank statement showing a wire transfer to Plaintiff (Doc. 26-2); and a proposed answer, which presses nine affirmative defenses (Doc. 26-3).[1] Plaintiff filed a reply in further support of order to show cause for default judgment on May 16, 2025. (Doc. 31).

The Court construes Defendants' response as both opposition to the pending motion for default judgment and as a cross-motion under Federal Rule of Civil Procedure 55(c) to vacate entry of the Clerk's Certificates of Default. *See Otter Prods., LLC v. Jones*, No. 22-CV-07861, 2023 WL 2368975, at *1 (S.D.N.Y. Mar. 6, 2023).[2]

I. Relief from Default

Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). "Because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Caleb & Brown Pty. Ltd. v. Thompson*, No. 20-CV-08612, 2021 WL 4226183, at *2 (S.D.N.Y. Sept. 16, 2021) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (alteration omitted)). "Good cause under Rule 55(c) should be construed generously, and the dispositions of motions for entries of defaults and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given

---

[1] Croton Development LLC may not proceed without counsel, *see Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007); although the individual Balbona may proceed on his own behalf and without counsel. Defendants' counsel has to appear, in the action, by motion or appearance. The filing of a proposed answer in opposition to a motion for a default judgment is not an appearance.

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

2

case." *Id.* (internal quotation marks and alterations omitted). "In determining whether to vacate a default or default judgment, the Court must consider three factors: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.* (quoting *Del Med. Imaging Corp. v. CR Tech USA, Inc.*, No. 08-CV-08556, 2010 WL 1487994, at *4 (S.D.N.Y. Apr. 13, 2010). "A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993). "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.*

Plaintiff asserts that Defendants cannot meet the third factor under Rule 55(c)—arguing that Defendants' proposed affirmative defenses are "both legally inapplicable and factually baseless." (Doc. 31 at 2). The Court agrees that Defendants fail to present a meritorious defense.

First, Defendants assert that Plaintiff fails to state a cause of action upon which relief may be granted. (Doc. 26-3 at 3). But Defendants do not explain why Plaintiff fails to state a claim. For instance, Defendants do not identify an element of Plaintiff's claim that has not been met. Defendants thus have failed to meet their burden of demonstrating a meritorious defense under this theory. *See Google LLC v. Starovikov*, No. 21-CV-10260, 2022 WL 1239656, at *3 (S.D.N.Y. Apr. 27, 2022) ("Mere conclusory denials . . . are not sufficient to show the existence of a meritorious defense.").

Second, Defendants press an "accord and satisfaction" defense. (Doc. 26-3 at 3). "Under New York law, an accord and satisfaction is a form of contract whereby one party agrees to give or perform, and the other party agrees to accept, what is offered in settlement of an outstanding claim." *Egyptian Canadian Co. v. Scope Imports Inc.*, No. 18-CV-02713, 2019 WL 2098149, at

3

\*3 (S.D.N.Y. May 14, 2019). This defense appears to be a reference to the Forbearance Agreement. To that end, Defendant Balbona references in his declaration making a payment of $38,000 pursuant to the Forbearance Agreement that "ended the matter." (Balbona Decl. ¶ 4). Moreover, proof of payment of this sum (Doc. 26-2) is the only evidence that Defendants submit besides Defendant Balbona's declaration. That agreement, however, unambiguously contradicts Defendants' "accord and satisfaction" defense. By the Forbearance Agreement terms, Plaintiff's $38,000 payment only acted as a "Down Payment." (Forbearance Agreement § 2(b)). Additionally, the Forbearance Agreement contained a merger clause. (*Id.* § 11). Thus, the evidence submitted by Defendants—proof that Balbona made a $38,000 payment to Plaintiff pursuant to the Forbearance Agreement—would not constitute a complete defense if proven at trial. *Cf. Enron*, 10 F.3d at 98. Indeed, it is evidence that the Forbearance Agreement was acted upon by Defendant Balbona.

Third, Defendants argue that they were improperly served. (Doc. 26-3 at 3). "[A] properly filed affidavit of service by a plaintiff is *prima facie* evidence that service was properly effected." *Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 260 (E.D.N.Y. 2014); s*ee also Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) ("In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service . . . ."). Here, Plaintiff submitted proper affidavits of service establishing that it served Defendant Croton Development LLC through the New York Secretary of State (Doc. 9) and personally on Defendant Balbona (Doc. 10). Plaintiff fails to rebut this *prima facie* evidence of proper service. Defendant Balbona, in his declaration, states that he was "not made aware of service" because at the time of the purported service he had been "hospitalized" for injuries related to "an automobile accident." (Balbona Decl. ¶ 2). Yet Defendants fail to offer any evidence

supporting this claim, such as hospital records. Thus, this "conclusory denial" of service "fail[s] to rebut the presumption of service created by the process server's affidavit." *HSBC Bank USA v. Gifford*, 224 A.D.3d 447, 450 (1st Dep't 2024).

Fourth, Defendants advance several equitable defenses, including "inequitable conduct, behavior and/or unclean hands"; "equitable estoppel"; and "bad faith." (Doc. 26-3 at 3). It is well-established, however, that "[i]n connection with a motion to vacate a default judgment, a defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001); *see also Loop Prod. v. Capital Connections LLC*, 797 F. Supp. 2d 338, 348 (S.D.N.Y. 2011) (holding that conclusory statement that "there exist meritorious defenses . . . including[,] but not limited to, anticipatory breach, repudiation, unclean hands, and accord and satisfaction[,]" was insufficient to demonstrate that the defaulting defendants had a meritorious defense). Defendants advance no evidence to support these defenses. The Court is therefore unable to ascertain whether the Defendants actually have a meritorious defense under this theory.

Fifth, Defendants assert that "Plaintiff is barred from any recovery due to its failure to satisfy conditions precedent in the promissory note and security instrument." (Doc. 26-3 at 3). Yet Defendants do not identify what "conditions" Plaintiff failed to satisfy. Thus, the Court is again unable to ascertain whether the Defendants actually have a meritorious defense under this theory.

Sixth, Defendants assert that Plaintiff failed to "comply with conditions precedent required by New York state and federal law to filing suit in foreclosure actions." (Doc. 26-3 at 3). But the only "conditions" that Defendants arguably identify are those required by "sections 1304 and 1306 of the Real Property Actions and Proceedings Law." (*Id.* at 4). It is well-established that both of those provisions only apply to loans in which the borrower is "a natural person." RPAPL §

1304(6)(a)(1)(i); *id.* § 1306(1) (applying only to loans subject to § 1304's notice requirements). Defendants do not contest that the loan in this litigation was solely between Plaintiff and Croton Development LLC. Indeed, Defendant Balbona, in his declaration, concedes that he "form[ed] Croton Development] LLC in order to obtain the loan." (Balbona Decl. ¶ 3). Thus, based on the factual record submitted to the Court, RPAPL § 1304 and § 1306 are inapplicable here and cannot constitute a complete defense. *See Green Mountain Holdings (Cayman) Ltd. v. 501 Lafayette Ave LLC*, No. 21-CV-05844, 2023 WL 6594003, at *6 (E.D.N.Y. Aug. 18, 2023) ("501 Lafayette LLC, the party listed on the relevant financial agreements, is not a natural person, and thus the loans at issue in this case are not 'home loan[s]' under the RPAPL, and do not require notices under § 1304."), *adopted sub nom. Green Mountain Holdings (Cayman) LTD v. 501 Lafayette Ave LLC*, 2023 WL 5993166 (E.D.N.Y. Sept. 15, 2023); *Titan Capital ID, LLC v. Tomtab, LLC*, No. 850149/2018, 2019 WL 2564003, at *3 (N.Y. Sup. Ct. June 21, 2019) (holding that the plaintiff did not need to comply with RPAPL § 1304 because the defendants "chose" to "create[] an LLC in order to execute a loan").

Finally, Defendants assert that Plaintiff "failed to take part in a mortgage modification process and are therefore barred from equitable relief." (Doc. 26-3 at 4). Defendants again appear to be referencing the Forbearance Agreement. But Defendants do not explain how Plaintiff failed to take part in the Forbearance Agreement—which was between Plaintiff and Defendants. As such, the Court is unable to ascertain whether the Defendants actually have a meritorious defense under this theory.

"While [Defendants'] conduct was not willful, and plaintiff[] would be subject to relatively minimal prejudice, [D]efendants have not pointed to the existence of any meritorious defense. The Second Circuit has explicitly held that a court may deny a motion to vacate a default under [Rule

6

55] . . . where it is clear from the record that the defendant failed to demonstrate that it possessed a meritorious defense." *Durso v. Mod. Food Ctr., Inc.*, No. 17-CV-07324, 2019 WL 2150424, at *13 (S.D.N.Y. May 17, 2019) (collecting cases).

Accordingly, Defendants' cross-motion to vacate their default is denied.

II. Default Judgment

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Plaintiff's counsel complied with Rule 55(a) and Local Civil Rule 55.1, and as noted *supra*, the Clerk of Court accordingly issued Certificates of Default against both Defendants. (Doc. 15; Doc. 16). As such, the Court accepts the well-pled factual allegations in the Complaint as true and draws all reasonable inferences in Plaintiff's favor. *See Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

However, the "district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." *Au Bon Pain Corp.*, 653 F.2d at 65. In a similar fashion, the Court does not accept blindly the allegations concerning damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). While an evidentiary hearing under Rule 55(b)(2) is not required, a plaintiff must establish through affidavits or other evidence "a basis for the damages specified in the default judgment." *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (internal quotation marks omitted).

Plaintiff, in its complaint, pressed a single claim for relief for foreclosure of a mortgage. (*See generally* Doc. 1). "In a mortgage foreclosure action under New York law, a lender must prove (1) the existence of a debt, (2) secured by a mortgage, and (3) a default on that debt." *U.S. Bank, N.A. v. Squadron VCD, LLC*, 504 F. App'x 30, 32 (2d Cir. 2012). Plaintiffs in New York must also satisfy "the statutory requirements set forth in Article 13 of the New York Real Property Actions and Proceedings Law." *Wilmington Sav. Fund Soc'y, FSB as trustee of Aspen Holdings Tr. v. Fernandez*, 712 F. Supp. 3d 324, 333 (E.D.N.Y. 2024).

Upon review of the parties' pleadings and submissions, the Court concludes that Plaintiff has established the common-law elements of a foreclosure action. The Court also finds that the requirements under Article 13 of RPAPL—specifically, the notice requirements under RPAPL § 1303 and § 1320 (*see* Doc 1-2; Doc. 9; Doc. 10), as well as the notice of pendency requirement under RPAPL § 1331 (*see* Doc. 19-1 at 84)—are met.

"The note and mortgage, as the governing instruments, should determine any default damages." *OneWest Bank, N.A. v. Conklin*, 310 F.R.D. 40, 45 (N.D.N.Y. 2015). Plaintiff, in support of its claim for damages, demonstrated that Plaintiff and Defendants entered into the Forbearance Agreement. As noted *supra*, the Forbearance Agreement "constitute[d] [] part of the Loan Documents" (Forbearance Agreement § 10), and the parties agreed that "any default in the performance or observance of any term, covenant or agreement to be performed" under the Forbearance Agreement "shall be deemed to be an immediate Event of Default under the Loan Documents" (*id.* § 1(l)).

Under the Forbearance Agreement, the outstanding principal amount from the original loan between Plaintiff and Defendant Croton Development LLC was $268,240.00, with a maturity date of March 30, 2025. (*Id.* § 2(c)). Interest accrued at a rate of 13.00%, which would increase to

24.00% upon default.[3] (*Id.* §§ 2(e), (h)). The Forbearance Agreement also required Defendants to pay a $12,000 "exit fee." (*Id.* § 2(d)).

Defendants defaulted on their payments beginning on January 1, 2025. (*Id.* § 2(e); Doc. 19-5 ¶¶ 7, 9). Plaintiff's detailed calculation of the amount owed by Defendants through March 17, 2025 appears to be correct: $296,606.62. (*See id.* ¶¶ 6-13).

Accordingly, the Court grants judgment of foreclosure and sale and directs that the proceeds of the foreclosure sale be paid to Plaintiff for the sum of $296,606.62.

## CONCLUSION

Plaintiff's motion for a default judgment is GRANTED, and Defendants' cross-motion to vacate the Clerk's entry of default is DENIED. Judgment will be docketed separately in accordance with this Order.

SO ORDERED.

Dated: White Plains, New York
June 16, 2025

_____
PHILIP M. HALPERN
United States District Judge

---

[3] The 24% interest rate does not run afoul of New York's usury laws because "the defense of usury does not apply" where the rate of interest in excess of the statutory maximum only applies "after default or maturity." *Builders Bank v. Rockaway Equities, LLC*, No. 08-CV-03575, 2011 WL 4458851, at *7 (E.D.N.Y. Sept. 23, 2011) (alteration in the original; quoting *Miller Planning Corp. v. Wells*, 253 A.D.2d 859, 860 (2d Dep't 1998)). In any event, the borrower here, as a limited liability company, may only raise the defense of usury if the interest rate exceeds the criminal usury rate of 25%. *See* N.Y. Gen. Oblig. Law § 5-521(1), (3).